THE STATE OF OHIO, APPELLANT, *v.* HENRY, APPELLEE.
THE STATE OF OHIO, APPELLANT, *v.* LONG, APPELLEE.

[Cite as State *v.* Henry (1983), 4 Ohio St. 3d 44.]

(No. 82-266—Decided March 16, 1983.)

*Mr. James A. Berry,* prosecuting attorney, and *Ms. Sally Dilgart,* for appellant.

*Mr. Allen Lehmkuhl,* for appellee Norman Henry.

*Mr. Randall M. Dana,* public defender, *Ms. Elizabeth Manton* and *Ms. Jill Stone,* for appellee Curtis Long.

SWEENEY, J.

I

The first issue before us concerns whether pursuant to R.C. 2901.02(B), aggravated murder is a capital offense requiring separate trials for jointly indicted defendants, where there has been no application for a joint trial as required by Crim. R. 14 and R.C. 2945.20.

The appellant, state of Ohio, contends that as a consequence of the United States Supreme Court decision in *Furman* v. *Georgia* (1972), 408 U.S. 238, and the general invalidation of Ohio's death penalty provisions in *Lockett* v. *Ohio* (1978), 438 U.S. 586, death can no longer be inflicted as punishment. Therefore, the state argues that there exist no capital crimes within this state, on the theory that since there can be no capital punishment, there can be no capital crimes. The state submits that at common law, a capital offense was one for which the death penalty could be inflicted, and cites many state court decisions in other jurisdictions as well as several Ohio appellate court decisions that have held that first degree or aggravated murder is no longer a capital offense after the decision in *Furman.* Our task, however, is to interpret the intent of the General Assembly with respect to Ohio law, by way of statutory construction.

Appellee Long argues that the plain meaning of R.C. 2901.02(B) maintains aggravated murder as a capital offense regardless of whether death can be imposed as a penalty.[1] Continuing, appellee contends that the strict mandates of Crim. R. 14 and R.C. 2945.20 require that separate trials be held unless the prosecutor or one of the defendants applies to the court for a joint trial, and the court then allows it for good cause shown.

R.C. 2901.02(B) states:

"Aggravated murder, *and* any offense for which death may be imposed as a penalty, is a capital offense." (Emphasis added.)

Crim. R. 14 states in relevant part:

"When two or more persons are jointly indicted for a capital offense, each of such persons shall be tried separately, unless the court orders the

---

[1] Since defendant-appellee Long was the only party who requested separate trials, he alone could preserve this point on appeal.

defendants to be tried jointly, upon application by the prosecuting attorney or one or more of the defendants, and for good cause shown."[2]

In interpreting the intent of the General Assembly, we find that R.C. 1.42 states in relevant part that:

"Words and phrases shall be read in context and construed according to the rules of grammar and common usage. * * *"

A plain reading of R.C. 2901.02(B) under this common usage construction leaves little doubt that the position advanced by appellee Long is the proper interpretation to be followed. However, R.C. 1.02(F) states that:

" 'And' may be read 'or,' and 'or' may be read 'and' *if the sense requires it.*" (Emphasis added.)

We believe that sense requires the conjunctive "and" to be read exactly as it is written in R.C. 2901.02(B). Certainly, the General Assembly was meticulous in authoring R.C. 2901.02(B) to insure that aggravated murder was a capital crime independent of whether the death penalty could be imposed. Throughout the Criminal Rules and R.C. Title 29 there appear certain statutory safeguards and detriments that take effect when a person is charged with committing a crime that is classified as a capital offense.[3]

Simply because the Ohio death penalty provisions were struck down in *Lockett, supra,* does not lead to the conclusion that any crime which imposed the death penalty is no longer a capital offense. The United States Supreme Court did not decide whether aggravated murder was a capital offense. The court merely held, *inter alia,* that the safeguards surrounding the sentencing of the death penalty were constitutionally infirm.

In any event, we hold that under the proper statutory construction aggravated murder is a capital offense, whether or not death may be constitutionally imposed as a penalty upon conviction. Under the law of this case, because neither the state nor appellee Henry applied and sought affirmative approval for a joint trial for good cause shown pursuant to Crim. R. 14 and R.C. 2945.20, we affirm the court of appeals and remand the cause for a new trial wherein appellee Long will be tried separately.[4]

---

[2] R.C. 2945.20 expresses similar language.

[3] In addition to the procedural protection of severance at issue in the instant case, the following Criminal Rules and statutes distinguish a capital offense from any other criminal offense:
Crim. R. 7(A) and R.C. 2941.021, prosecution by indictment or information;
Crim R. 24(C) and R.C. 2945.21, peremptory challenges;
Crim. R. 24(G)(2)(c), jury under court supervision;
Crim. R. 46(A) and (E), bail;
R.C. 2945.18, venire for jury in capital cases;
R.C. 2945.19, special venire in capital cases; and
R.C. 2967.13(B), parole eligibility.

[4] We also note that the time restraints within Crim. R. 12 do not apply here, since defendants did not bear the burden of requesting separate trials.

## II

The second issue to be decided in this cause is whether the prosecutor's misstatements of Ohio law concerning the sufficiency of evidence necessary to convict on an aggravated murder charge so prejudiced the defendants as to deprive them of a fair trial.

The statements in issue, made by the prosecutor during closing argument, were as follows:

"Well, let's begin with Mr. Long uncontroverted, if he didn't do anything else in this case, from his own mouth you heard the testimony that Mr. Long got rid of the wallet. Uncontroverted.

"Uncontroverted in this case that you heard from his own mouth was the fact that Mr. Henry drove the automobile away from the scene of the crime. That's what you heard from their own mouths. Those two things alone are enough to convict them."

At that point, both defendants' counsel objected to these statements as being misstatements of the applicable law. The trial judge overruled the objections. Then, after the jury had been deliberating for approximately five and one-half hours, the foreman presented a question from the jury to the court:

"Does getting rid of evidence from an aggravated robbery constitute guilt of aggravated murder when a victim dies as a result of the aggravated robbery?"

Over objection, and after defense counsel requested that the question be answered in the negative, the trial court answered the inquiry with a standard response that the function of the jury is to weigh all of the evidence.[5]

The state submits several arguments as to why this interplay does not constitute reversible error. First, the state argues that this comment was merely one among many made during closing arguments and therefore is not prejudicial. Second, the state argues that the comments were made only in retaliation to the improper remarks made by opposing counsel, and as such, any error is therefore neutralized. Third, the state contends that in light of the ample proof of defendants' guilt, such isolated remarks do not rise to the level of depriving the defendants of a fair trial. Lastly, the state submits that even though defense counsel objected to the remarks made by the prosecutor, any point of error was not preserved on appeal because no mistrial was sought; and that in any event, any error was cured by proper jury instructions.

We find the state's arguments to be totally devoid of merit. Given the

---

[5] Specifically, the trial court responded to the jury's inquiry in the following manner:

"You are the sole judges of the disputed facts, the credibility of the witnesses, and the weight of the testimony; and upon determination thereof, you are to apply the instruction of law as provided by the Court. You must consider this evidence in light of your findings on all the evidence in the case in determining the ultimate questions of innocence or guilt of these charges."

specific question posed to the court by the jury during its deliberations, it seems clear to us that the jury was in fact considering the prosecutor's remarks. Furthermore, the trial court had opportunity to cure the error but failed to do so. We do not believe that the trial court's response to the jury's inquiry eliminated the prejudicial effect that the misstatements of law had upon the minds of the jurors. Thus, we are in agreement with the court of appeals and hold that both defendants were deprived of a fair trial, and are entitled to new trials based upon this obvious error.

In reversing the trial court on this point, we are not dealing with mere incidental, isolated comments, nor are we unduly limiting the latitude customarily afforded counsel in closing arguments. See *State* v. *Liberatore* (1982), 69 Ohio St. 2d 583, 589 [23 O.O.3d 489]. However, we view the prosecutorial misstatements as an attempt by the prosecution to urge the jury to disregard the "purpose to kill" element which is crucial to Ohio's aggravated murder statute and renders this law distinct from the strict common-law felony-murder rule. *State* v. *Scott* (1980), 61 Ohio St. 2d 155, 166 [15 O.O.3d 182]. In addition, we view the prosecutor's misstatements as an attempt to supply the *mens rea* requirement by reliance on appellees' admissions to after-the-fact knowledge of a robbery.

Therefore, we affirm the court of appeals in reversing and remanding this cause for new trials wherein both defendants are to be tried separately.

*Judgment affirmed.*

CELEBREZZE, C.J., W. BROWN, LOCHER and C. BROWN, JJ., concur.

HOLMES, J., dissents.

J. P. CELEBREZZE, J., not participating.

HOLMES, J., dissenting. I disagree with the majority's resolution of each issue in this appeal, so I respectfully dissent.

First, in my opinion, the General Assembly's intent in enacting R.C. 2901.02(B) was to define capital offenses as those for which the death penalty could be imposed. This is what distinguished capital from other offenses at common law, and R.C. 2901.02(B) does not evidence sufficient legislative intent to vary this well-established rule. At the time of this trial, Ohio did not have a death penalty provision by virtue of *Furman* v. *Georgia* (1972), 408 U.S. 238, and *Lockett* v. *Ohio* (1978), 438 U.S. 586. Therefore, the majority incorrectly holds that, in this case, aggravated murder was a capital offense in the application of R.C. 2901.02(B).

Second, I disagree with the holding that appellant's closing argument contained prejudicial error. Since the trial court gave a correct definition of the law, I find it hard to consider this minor discretion even error. Additionally, even considering it error, in light of the overwhelming evidence of appellees' guilt, it is, in my opinion, harmless error.

Therefore, I would reverse the judgment of the court of appeals.